AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT

### for the
### Western District of Washington

| | |
|---|---|
| In the Matter of the Search of ) | |
| *(Briefly describe the property to be searched* ) | |
| *or identify the person by name and address)* )  Case No.   MJ22-238 | |
| A Residence Located in Everett, Washington, ) | |
| A Silver Ford Ecosport, and a Person, ) | |
| more fully described in Attachments A-1 to A-3 ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

Residence, Vehicle, and Subject as described in Attachments A-1 to A-3, incorporated herein by reference.

located in the _____ Western _____ District of _____ Washington _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, attached hereto and incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2261A(2)(B) | Cyberstalking |
| 47 U.S.C. § 223(a)(1)E) | Repeated Harassing Communications |

The application is based on these facts:

✓   See Affidavit of NCIS Special Agent Eddy D. Crochetiere, attached hereto and incorporatated herein by reference.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or ☐ telephonically recorded.

_____
*Applicant's signature*

Eddy D. Crochetiere, Special Agent, NCIS
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:      05/27/2022                           _____
                                                                *Judge's signature*

City and state:   Seattle, Washington           S. KATE VAUGHAN, United States Magistrate Judge
                                                                *Printed name and title*

# AFFIDAVIT OF EDDY D. CROCHETIERE

STATE OF WASHINGTON      )
                         )      ss
COUNTY OF KING           )

I, Eddy D. Crochetiere, being first duly sworn on oath, depose and say:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

2.      I am a Special Agent (SA) with the Naval Criminal Investigative Service currently assigned to the Southwest Field Office in San Diego, California, and have been so employed since December 2020. In that capacity, I investigate all felony-level crimes against persons but specialize in Family and Sexual Violence (F&SV) and other associated offenses. Prior to my employment with NCIS, I served on active duty in the U.S. Coast Guard for over five years, where I worked as a Maritime Enforcement Specialist enforcing general federal law as well as recreational boating, commercial fishing, customs, and maritime security laws and regulations. As a federal agent, I am authorized to investigate violations of laws of the United States and am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

3.      My training and experience includes, but is not limited to, six months of rigorous training at FLETC in criminal investigations and the study of laws related to the United States Code. Additionally, I completed three months of rigorous training at FLETC in maritime criminal investigation and interdiction and the study of laws related to the United States Code, Code of Federal Regulations, and United Nations Convention on the Law of the Sea. I graduated from the University of California and Arizona State University where I obtained a Bachelor of Arts and a Master of Arts degree, respectively.

4.      During my law enforcement career, I have become familiar with investigations of F&SV offenses (primarily domestic violence, rape, sexual assault, and child exploitation) and the methods by which offenders utilize electronic service providers to perpetrate peripheral offenses such as cyber stalking, criminal threats, harassing communications, obstruction of justice, destruction of evidence, witness intimidation, and the unauthorized distribution of intimate images. I have participated in the execution of numerous search warrants, including residential search warrants. As the vast majority of these have involved crimes completed using electronic communications services, I have personally been involved in the seizure of electronic devices. In executing my maritime law enforcement duties in the U.S. Coast Guard, I conducted searches of many dozens of seagoing residences and living compartments for contraband and other evidence of criminal activity. Based on my training, experience, and conversations with other experienced F&SV investigators, I have gained experience in the techniques and methods used by offenders to perpetrate and/or conceal their crimes, including conducting searches and seizures of both physical and digital evidence.

5.      The facts set forth in this affidavit arise from my personal and direct participation in the investigation, my experience and training as an NCIS Special Agent, my conversations with witnesses, and my review of relevant documents and reports. I have not included each and every fact known to me or other investigative personnel concerning this investigation. My specialized training and experience in F&SV investigations, as well as the assistance and input of experienced fellow investigators, form a basis for my opinions and conclusions, which I drew from the facts set forth herein.

### PURPOSE OF THIS AFFIDAVIT

6.      I make this affidavit in support of an application for a warrant authorizing the search of the following premises, further described below and in Attachment A-1, for evidence and instrumentalities, as further described in Attachment B, of the crimes of

AFFIDAVIT OF SA CROCHETIERE – 2
USAO # 2021R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 300
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  cyberstalking, in violation of 18 U.S.C. § 2261A(2)(B), and repeated harassing interstate

2  communications, in violation of 47 U.S.C. § 223(a)(1)(E) (the Target Offenses):

3  > **Target Residence 1** ("**TR1**"), a residence located at **8620 8th Avenue**
4  > **West, Apartment C, Everett, WA 98204**. **TR1** is the apartment
5  > designated as Apartment C within a light blue/gray-colored two-story four-
6  > unit apartment building with two garage doors facing the street on the west
7  > side of 8th Avenue West in Everett. The entrance to Apartment C is
   > accessed by stairs to a door on the north side of the building and has a "C"
   > on the door.

8  This application seeks authority to search extending to all parts of the premises under

9  exclusive control of the subject of the investigation, Christopher Scott CRAWFORD

10 (C.S. CRAWFORD), including the main residential unit, its assigned driveway and

11 garage, any assigned storage structures, or outbuildings, curtilage, and all vehicles

12 located in the same, and any containers, compartments, or safes located in the same,

13 whether locked or not, where the items described in Attachment B (list of items to be

14 seized) could be found.

15         7.      This application also seeks warrants for the search of a vehicle known to be

16 used by C.S. CRAWFORD, described in Attachment A-2, and for the search of the

17 person of C.S. CRAWFORD, described in Attachment A-3.

18         8.      As set forth below, there is probable cause to believe that aforementioned

19 residence and vehicle, and the person of C.S. CRAWFORD contain items that are

20 evidence of and have been used in furtherance of crimes by C.S. CRAWFORD, who is

21 suspected of committing the offenses of cyberstalking and repeated harassing interstate

22 communications, in violation of 18 U.S.C. § 2261A(2)(B) and 47 U.S.C. § 223(a)(1)(E),

23 respectively.

24                              **THE INVESTIGATION**

25         9.      On October 27, 2021, fourteen public-facing U.S. Navy email addresses

26 received an email from the email address "crawford132@gmail.com," with the display

27 name of "Scott crawford." As explained below, this email address is associated with

28 subject C.S. CRAWFORD. The email contained thirty-six nude and/or intimate digital

AFFIDAVIT OF SA Crocheriere – 3
USAO # 2021R01443

photos of a young woman later determined to be C.S. CRAWFORD's ex-wife K.C., a U.S. Navy service member. The email message identified K.C. by name and rank and alleged that she was a prostitute who solicited clients using the internet. I later confirmed this email to be genuine through the use of an electronic search warrant to Google LLC ("Google") for their original copy of the email from the "crawford132@gmail.com" account. Routine criminal records checks revealed that C.S. CRAWFORD had an extensive criminal history of stalking and threatening K.C. and those associated with her in violation of existing restraining orders. The criminal history included numerous police reports, several arrests, active restraining orders (in California, Texas, and Washington), and active arrest warrants (in California and Texas). C.S. CRAWFORD is known to reside in Everett, Washington, and K.C. was, at the time, stationed by the U.S. Navy in San Diego, California. I have uncovered no information that would support the allegation of prostitution.

10.     I conducted an initial interview with K.C. on November 2, 2021. During the interview, K.C. stated that, since their separation in approximately April of 2019, C.S. CRAWFORD has continually harassed her with phone calls, text messages, emails, social media messages, and gift messages appended to commercially delivered parcels, in defiance of restraining orders. K.C. stated that C.S. CRAWFORD would call her repeatedly – usually during inconvenient late-night hours – from his known cellular phone number as well as Google Voice phone numbers unknown to her. K.C. stated C.S. CRAWFORD's communications primarily contained profane and lewd insults, disparaging remarks, and threats to "destroy" or "ruin" her. K.C. stated that C.S. CRAWFORD has repeatedly told her that he would not stop harassing her until she killed herself. K.C. has changed her phone number at least five times to avoid contact with C.S. CRAWFORD but he very quickly discovers the new number and resumes harassing her. In addition, K.C. stated C.S. CRAWFORD has told her that he provided her contact information and address to his associates in prison.

AFFIDAVIT OF SA CROCHETIERE – 4
USAO # 2021R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 300
SEATTLE, WASHINGTON 98101
(206) 553-7970

11.     K.C. stated that C.S. CRAWFORD has harassed and threatened other people associated with her, including her mother, stepfather, grandfather, sister, divorce attorney, a court-mandated psychologist, and various members of her command. Interviews with or statements from her mother, stepfather, sister, court-mandated psychologist, and members of her command (including the individuals referred to herein as D.A. and M.N.) have confirmed the same.

12.     K.C. stated she was also aware of C.S. CRAWFORD distributing her intimate images to her acquaintances and posting them on adult websites including the website Pornhub. K.C. stated she consensually sent C.S. CRAWFORD the intimate images approximately ten years prior. K.C.'s verbal descriptions of the photographs and their backgrounds matched the set of images sent to the U.S. Navy inboxes.

13.     K.C. stated the harassment sends her "into a panic," causes her to not be able to "function," and has made her feel "anxious" and "paranoid." She stated she is "scared" of C.S. CRAWFORD and in the past has "slept with the recliner pushed up against the door" in case he were to break into her residence in the middle of the night. She added she is being treated by a therapist for Post-Traumatic Stress Disorder (PTSD) due to C.S. CRAWFORD's alleged offenses. During the in-person interview, I observed her to have visibly shaking hands, general fidgeting, dejected posture, shaky voice, and frantic speech patterns when discussing the offenses.

14.     After the interview, K.C. provided me with a data CD containing approximately 246 digital files. These files consisted of portable document file (PDF) exports, audio files, screenshots, and images documenting hundreds of harassing emails, phone calls, text messages, social media messages, and voicemails appearing to be sent from C.S. CRAWFORD to K.C., her family members, and her associates. Almost every communication from C.S. CRAWFORD included insulting names, obscene language, threats, and/or statements of his intent to embarrass, humiliate, scandalize, stalk, "ruin," "destroy," cause suffering to, cause mental illness to, and impoverish K.C.

AFFIDAVIT OF SA CROCHETIERE – 5
USAO # 2021R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 300
SEATTLE, WASHINGTON 98101
(206) 553-7970

C.S. CRAWFORD also stated in several communications that he intended to torment K.C. until she killed herself.

15.     I reviewed digital files obtained from K.C. documenting harassing text messages and transcribed voicemails from phone number (512) 667-5926 to K.C. Based on the content of the messages, they appeared to be from C.S. CRAWFORD, and subscriber information obtained from T-Mobile USA, Inc. for (512) 667-5926 revealed it to be subscribed to "CHRISTOPHER CRAWFORD" at 8616 8TH AVE W, EVERETT, WA 98204.

16.     Based on my review of the digital files provided by K.C., the Google email account "crawford132@gmail.com," which is the same email account from which the nude/intimate photos of K.C. were sent to fourteen public-facing U.S. Navy email inboxes, was also the apparent sender of dozens of threatening and harassing emails to K.C. and others associated with her. The following are examples of email messages from "crawford132@gmail.com" that I have reviewed in the original submission of digital files by K.C. I later confirmed these emails to be genuine through the use of an electronic search warrant to Google for their original copy of the content of the "crawford132@gmail.com" account:

- An email sent on June 10, 2020, to K.C. and the guardian ad litem appointed by the Snohomish County Superior Court in connection with divorce proceedings, included the following: "You have a very hard road ahead of you and I'm going to be watching. One slip up, one instance of me thinking you are not fit to raise our daughter and Im going to take [S.C. [1]] away from you. That is a fucking promise."
- An email sent to K.C. on June 16, 2020, included the following: "I fucking hate you. The only things keeping me going are knowing that doing so vexes you and to someday watch you lose everything like I have."

---

[1] S.C. is the daughter of K.C. and C.S. CRAWFORD.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- An email sent to K.C. on June 22, 2020, included the following: "You wont be able to hide behind this TEMPORARY protective order for much longer."

- An email sent to K.C. on October 27, 2021, included the following: "Why would you assume that your nude photos were only on one site? Every single time I miss my daughter, I am going to make you suffer for it. Ask [M.N.[2]] which one of your misshapen tits he likes best, hes seen them many times."

- An email sent to K.C. on October 27, 2021, included the following: "and you have 2 days to pay me 850 dollars AND have a visitation supervisor call me or I file 6 contempt cases against you. You worthless fucking whore, I amgoing to make sure that you spend every single day hating that you were ever born."

- A second email sent to K.C. on October 27, 2021, included the following: "and btw, I sent multiple copies of ALL your nudes to kirkland in prison and told him to distribute them to anyone he wanted. He also distributed your full name,social security number, address and employment...you know, in case anyone is getting out and wants to visit the cunt who he's been jerking off to for a year."

- An email sent to K.C. on October 29, 2021, included the following: "Just wanted to let you know that I came across a porn ad to "fuck local singles" and they were using one of your nudes in their ad. Isn't that great?! Millions of people all over world, at random, now have proof that you are a whore for as long as their is the internet. Does it turn you on knowing that your father jerks off to you? Oh, did I forget to mention that I sent all of your nudes to your pedophile family years ago? Fuck you cunt. My goal in life is to make you kill yourself."

- A second email sent to K.C. on October 29, 2021, included the following: "Tomorrow I'm going to sell your SSN, your phone number, your email address and all your personal history on the dark web. Just try and stop me, cunt."

---

[2] M.N. at the time was serving as K.C.'s Command Master Chief.

- A third email sent to K.C. on October 29, 2021, included the following: "I'm also going to print out your nudes and mail them to every address within 5 blocks of you, so all your neighbors know what a whore you are. I'm also working on getting the email addresses for every chief in your command and guess what they will find in their email? That's right! Vulgar photos of a lying, cheating whore!"

- Another email sent to K.C. on October 29, 2021, included the following: "I am going to ruin your life. I am going to make every breath you have ever drawn, wasted. I am going to make sure you beg for a bus to run you over. And when your mental state starts slipping even more, I am going to fight tooth and nail to have you disgraced, comitted and then I am going to take S.C. from you forever."

- An email sent on November 9, 2021, and forwarded directly to me from K.C., included the following: "Keep trying,stupid, they wont stop me, they wont touch me, but they will absolutely arrest you for kidnapping. I know you think youve gotten me, im just letting you tighten the noose, cunt."

17.    An email sent from "crawford132@gmail.com" on November 30, 2021, and forwarded directly to me from K.C., consisted of the following: "If I end up homeless because of your bullshit, you will not survive my homelessness. I swear it." I later confirmed this email to be genuine through the use of an electronic search warrant to Google for their original copy of the email from the "crawford132@gmail.com" account. K.C.'s subsequent reporting of this specific email to D.A., her supervisor, resulted in D.A. initiating an "expedited transfer" of K.C. and her daughter S.C. to a new duty station in a different state for her safety.

18.    Subscriber information obtained from Google for "crawford132@gmail.com" revealed the email account to be subscribed to "Scott Crawford," with a verified phone number of (512) 667-5926 and an account identifier of 889486101222.

19.    On November 24, 2021, Google was served with a preservation letter under 18 U.S.C. § 2703(f) related to the Google email account "crawford132@gmail.com."

AFFIDAVIT OF SA CROCHETIERE – 8
USAO # 2021R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 300
SEATTLE, WASHINGTON 98101
(206) 553-7970

20.    Based on my review of emails provided to me by K.C.'s stepfather, on or about November 3, 2021, a Facebook account with the display name "Rick Johnston" was used to send to K.C.'s stepfather eight nude/intimate images of K.C. consistent with the set of intimate images sent by "crawford132@gmail.com" to the U.S. Navy inboxes. I later confirmed these messages to be genuine through the use of an electronic search warrant to Meta Platforms, Inc. (the parent company of Facebook) for their original copy of the content of the "Rick Johnston" Facebook account.

21.    Information obtained from Meta Platforms, Inc. regarding the "Rick Johnston" Facebook account (account number 100074078874761) revealed the email address associated with the Facebook account to be the Google email account "rickjohnston1888@gmail.com." Subscriber information obtained from Google for the "rickjohnston1888@gmail.com." email account revealed Internet Protocol (IP) address 2601:601:a300:4ab0:cd57:98ec:2a4a:6899 was used to log in to this account on October 30, 2021, at 2:15 and 2:17 a.m. UTC. Subscriber information obtained from Comcast Cable Communications for this IP address revealed it to be subscribed to CHRISTOPHER CRAWFORD at 8620 8TH AVE W APT C, EVERETT, WA 98204-1640 (that is, **TR1**). Additionally, this same IP address was used to log into Instagram account number 27235979350 (with account vanity name "cscottcrawford") on October 30, 2021, at 4:02 a.m. UTC. Subscriber information regarding this Instagram account revealed it to be registered to "Scott Crawford" with the verified cellular phone number of (512) 667-5926.

22.    I have received a copy of an Agreed Protective Order, number 2012-C1-15792, issued by the District Court of Bexar County, Texas, dated October 11, 2012, which protects K.C.'s mother, stepfather, and sisters from communication or harassing conduct by C.S. CRAWFORD. The order stemmed from an inconclusive police investigation into C.S. CRAWFORD's alleged sexual molestation of K.C's 10-year-old sister, C.B. The order states that it is in effect for the lifetime of C.S. CRAWFORD, states that C.S CRAWFORD appeared at the hearing in person, was represented by an

1    attorney and agreed to the order, and is signed by C.S. CRAWFORD's attorney. The

2    sending of the nude/intimate images of K.C. via the "Rick Johnston" Facebook account

3    appear to be a violation of this order.

4         23.    Based on my review of the digital files provided by K.C., the user of

5    Google Voice phone number (401) 615-4218 has repeatedly called K.C.'s cellular phone

6    and at least once has left a voicemail with disparaging remarks. Subscriber information

7    obtained from Google for this Google Voice phone number revealed it to have the

8    Google Account ID 889486101222, and to be registered to "Scott crawford" with a true

9    phone number of (512) 667-5926. The same Google Account ID is also the account

10   identifier for the "crawford132@gmail.com" Google email account.

11        24.    Based on my review of the digital files provided by K.C., the Google Voice

12   phone number (786) 904-3683 has sent lewd text messages to the cellular phone of J.M,

13   one of K.C.'s U.S. Navy coworkers. I have reviewed saved images of the text messages

14   sent to J.M. The text messages contained lewd insults and two nude/intimate images of

15   K.C. that appear to be from the set of nude/intimate images sent by

16   "crawford132@gmail.com" to the U.S. Navy inboxes. Among other things, the sender of

17   the messages stated, after sending one of the photos, "These pictures are being sent all

18   over the navy, to her command, her coworkers, her former shipmates, even the secretary

19   of defense." After sending another of the nude/intimate photos, the sender stated, "Don't

20   worry, I don't care if you save the pics and jerk off to them…I sent her pictures and

21   address to prison inmates for exactly that reason, and frankly, if I was married to your

22   wife, I'd be looking everywhere else as well." After being advised by J.M. that if the

23   sender continued to make contact with him or any member of his family, he would be

24   contacting the police and filing a report for harassment and distributing pornographic

25   images without consent, the sender responded by texting, among other things, "Call the

26   cops, please, they won't do a fucking thing, just ask [K.C.] how much she was able to

27   stop me." After threatening to ruin J.M.'s career, the sender replied, "And thanks to your

28   empty shit talk, I am going to track down and contact every single member of your

AFFIDAVIT OF SA Crochetiere – 10
USAO # 2021R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 300
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  family I can find." Subscriber information obtained from Google for Google Voice phone

2  number (786) 904-3683 revealed it to have Google Account ID 456326907605, and to be

3  registered to "Christopher crawford" with a recovery email of

4  "crawford132@gmail.com" and a recovery cellular phone number of (512) 667-5926.

5      25.    Information obtained from Google revealed this Google Voice number

6  called K.C.'s cellular phone three times and sent one text message on October 29, 2021. I

7  have obtained a certified copy of a Criminal Protective Order issued by the Superior

8  Court of California, County of San Diego, restraining C.S. CRAWFORD from having

9  any personal, electronic, telephonic, or written contact with K.C., with exceptions only

10  for the safe exchange of children and court-ordered visitation. The order indicates that

11  C.S. CRAWFORD was served with a copy of the order at the hearing, and that it was

12  issued on June 9, 2021, and expires three years from the date of issuance. At the time of

13  the calls and text message in October 2021, the protective order was in effect, K.C. had

14  custody of S.C. and was residing in California, and C.S. CRAWFORD was residing in

15  Washington.

16      26.    I have received and reviewed nine images and 28 digital audio files

17  provided by U.S. Navy Master Chief Petty Officer M.N., who was, at the time, K.C.'s

18  Command Master Chief. M.N. stated that he began receiving calls from

19  C.S. CRAWFORD in approximately April 2021, and that the calls were initially polite

20  until M.N. refused to assist C.S. CRAWFORD in forcing K.C. to provide money and

21  other considerations, after which C.S. CRAWFORD began using obscene, lewd, and

22  insulting language toward M.N. In one of the voicemail messages to M.N. that I have

23  reviewed, the caller identified himself as "Christopher Crawford," and said, in part, "I am

24  not going to just burn down Petty Officer Crawford's house, I'm going to burn down the

25  house of everyone who gave her shelter...metaphorically speaking." and "what do you

26  fucking think I'm going to do to any of you that fucking let her do this shit to me? Any of

27  you that step between me and my fucking child like that first command did, and I

28  guarantee you I will make the act of Congress happen necessary to get your fucking

AFFIDAVIT OF SA Crochetiere – 11
USAO # 2021R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 300
SEATTLE, WASHINGTON 98101
(206) 553-7970

anchors in my god damned pocket!" In another voicemail message, the caller identified himself as "Chris Crawford" and said, in part, "Yeah, you keep going out and protecting her. And when she's in prison, I'll come after all of you next!" A portion of the images I reviewed documented text messages sent to M.N. from (512) 667-5926, the T-Mobile phone number associated with C.S. CRAWFORD. A sampling of the text messages from (512) 667-5926 that were sent to M.N.'s government cell phone read as follows:

- "Petty officer [K.C.], who bragged on the record about making chief, is an internet portn star and for the rest of her life, her friends, family and employers will receive links to the dozens of websites that contain her photos and videos and they all identify her by name, rank and rate."

- "I'm going to make it so that her being in the military is a liability to the US government. I may even decide to list the classified material that the idiot left behind...who knows? Point is, as long as she has my daughter, she will live in hell."

- "Point is, [K.C.] will be sending me 75% of her pay and retirement for the rest of her life. When she can no longer feed my daughter, I will take custody and watch happily as [K.C.] kills herself."

- After sending a nude photo of K.C. that appears to be one of the photos sent to U.S. Navy inboxes, a text message was sent from the same number reading, "Did you enjoy the pictures? I've spent the last two days emailing them to every single navy email address I can get my hands on."

27.   The digital files from K.C. also documented text messages from (786) 904-3683, the Google Voice phone number associated with C.S. CRAWFORD. One of the images I reviewed appeared to be a string of undated text messages from (786) 904-3683 to M.N.'s personal cell phone. The sender sent an image file that appears to be one of the intimate photos of K.C. sent by C.S. CRAWFORD to U.S. Navy inboxes. After sending the photo, the sender sent several text messages that included the following:

- "Don't worry, most of the navy around the world is receiving these pictures"
- "I am going to destroy her and do everything I my power to make her kill herself. I've already sent her nudes and address to some friends of mine in prison, they are going to be visiting her for some fun when they get out, im sure. I'm also selling her social, birthrate, name, address, and all military paperwork I have from 10 years with her on the dark web."

28.     On December 15, 2021, Google was served with preservation letter under 18 U.S.C. § 2703(f) related to Google Voice phone numbers (401) 615-4218 and (786) 904-3683.

29.     From my interview of K.C., I learned that her nude/intimate images were posted to the Pornhub website by the Pornhub account with username "skabb155." Pursuant to a takedown request by K.C., Pornhub had later removed the images from public view and banned the "skabb155" account from their service. I obtained Pornhub subscriber information for the account "skabb155," which revealed it to be registered to "christopher crawford" with an email address "crawford132@gmail.com." The subpoena further revealed the account to have created two public photo albums: "US Navy, STG1, San Diego" (Album ID 61386732), and "US NAVY STG1, San Diego" (Album ID 61386822). "STG1" is the U.S. Navy designation for K.C.'s rating, that is, Sonar Technician (surface) Petty Officer 1st Class. I later obtained an electronic search warrant for a copy of the content of the "skabb155" account from MG Freesites, Ltd., the parent company that operates Pornhub, and confirmed that these two public photo albums genuinely contained the same nude/intimate photos of K.C. that were sent to fourteen public-facing U.S. Navy email inboxes by C.S. CRAWFORD.

30.     On November 24, 2021, MG Freesites, Ltd. was served with a preservation letter under 18 U.S.C. § 2703(f) related to the "skabb155" account.

31.     Based on my interview of K.C. and my review of a digital photo provided by her, a foot massager purchased from Amazon.com was delivered to K.C.'s residence

AFFIDAVIT OF SA CROCHETIERE – 13
USAO # 2021R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 300
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   with a gift receipt bearing Order ID 111-4319768-1041835 and a transaction date of

2   October 11, 2020, and stating it was from "c scott crawford." The included gift message

3   read, "Enjoy your gift! Happy early birthday. I hope this helps you relax so that you can

4   focus on what is important and make better choices. I made promises I meant, even if you

5   didn't. From c scott crawford." Subscriber information from Amazon for the purchaser

6   associated with that Order ID number revealed the account that placed the order to be

7   registered to "c scott crawford" with an email address of "crawford132@gmail.com" and

8   a billing address of "8620 8TH AVE W APT C, EVERETT, WA, US 98204-1640" (that

9   is, **TR1**). This communication came at a time when the Criminal Protective Order from

10  San Diego County was in effect. I later confirmed this Amazon gift delivery to be

11  genuine through the use of an electronic search warrant to Amazon.com, Inc. for their

12  original copy of the data associated with Order ID 111-4319768-1041835.

13      32.     On December 3, 2021, Amazon.com, Inc. was served with a preservation

14  letter under 18 U.S.C. § 2703(f) related to order identifier 111-4319768-1041835 and the

15  account associated with that transaction.

16      33.     Based on my interview of K.C. and my review of digital files provided by

17  her, the user of the Facebook account with display name "Scott Crawford" (account

18  identifier 100002445195272) sent harassing messages to K.C. Among the messages I

19  have reviewed were a string of messages sent to K.C. between 4:09 a.m. and 4:58 a.m. on

20  January 09, 2020, that read as follows:

21  • "What's worse, using words to hurt someone or using childish, petty, vindictive

22      actions to do the same?"

23  • "'People will provoke you until they bring your ugly side, then play the victim

24      when you go there.' You are not the victim, stop trying to be."

25  I later confirmed these messages to be genuine through the use of an electronic search

26  warrant to Meta Platforms, Inc. for their original copy of the content of the "Scott

27  Crawford" Facebook account.

28

AFFIDAVIT OF SA CROCHETIERE – 14
USAO # 2021R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 300
SEATTLE, WASHINGTON 98101
(206) 553-7970

34.     Additionally, based on the digital files provided by K.C., the "Scott Crawford" Facebook account also sent harassing messages to K.C.'s mother, J.C. that appear to be in violation of the lifetime restraining order against C.S. CRAWFORD issued by the District Court of Bexar County, Texas. I have reviewed a message from "Scott Crawford" to J.C. sent on August 1, 2020, that reads as follows (certain references to individuals have been replaced with bracketed references based on my understanding of these individuals' identities):

> call your daughter. she has left me so you have gotten what you always wanted. If I find out that you are talking to [S.C.] though, I will be calling CPS on [K.C.] for the 4th time. She is already going to lose custody of [S.C.], don't help her do it any more thoroughly
> Dont forget that you are a pedophile, like your whole family. The [Guardian ad Litum for S.C.] has already ruled that you are a threat to [S.C.] and I have [K.C.'s] wills where she said she disowned you. YOu will never be allowed to be in a position where you can hurt my daughter like you did with your other kids, but you can still talk to your daughter. Granted, she has become a stupid, irresponsible, abusive, negligent, evil waste of life, but taht is why I feel you two will get along better now.

I later confirmed these messages to be genuine through the use of an electronic search warrant to Meta Platforms, Inc. for their original copy of the content of the "Scott Crawford" Facebook account.

35.     According to Facebook subscriber records, the "Scott Crawford" Facebook account is registered to "Scott Crawford" with a verified phone number of (512) 667-5926 (verified on August 22, 2022), and a registered email address of crawford132@hotmail.com.

36.     Based on my interview with K.C. and my review of digital files provided by her, the Facebook account with display name "Christopher Crawford" (account identifier 100054164457078) sent harassing messages to J.C. contemporaneously with the messages from the "Scott Crawford" account. Among other things, the messages accused J.C. of being a "pedophile" and claimed that K.C. was now a convicted criminal with over 30 more charges pending. Records checks conducted through the National

1    Crime Information Center (NCIC), State Regional & Federal Enterprise Retrieval System

2    III (SRFERS), and Department of Defense Law Enforcement Defense Data Exchange (D-

3    DEx) databases revealed no criminal history for K.C. A check conducted through the

4    Defense Information System for Security (DISS) database revealed K.C. remains eligible

5    for a Sensitive Compartmented Information (SCI) clearance designation, which is the

6    highest security clearance designation in the U.S. Government. According to Facebook

7    subscriber information, the "Christopher Crawford" account revealed is registered to

8    "Christopher Crawford" with a verified phone number of (512) 667-5926, and an account

9    creation date of August 1, 2020. I later confirmed these messages to be genuine through

10   the use of an electronic search warrant to Meta Platforms, Inc. for their original copy of

11   the content of the "Christopher Crawford" Facebook account.

12        37.    On December 6, 2021, Meta Platforms, Inc. was served with a preservation

13   letter under 18 U.S.C. § 2703(f) related to Facebook account identifiers

14   100002445195272 (username Scott Crawford), 100054164457078 (username

15   Christopher Crawford), and 100074078874761 (username Rick Johnston).

16        38.    Based on my interview with K.C. and my review of digital files provided

17   by her, the Instagram account "cscottcrawford" (account identifier 27235979350) made a

18   harassing public comment on a public Instagram post made by K.C. The public comment

19   stated, "She wrote me this on 4/07/2018" along with a digital image appearing to be a

20   photograph of a computer screen displaying text. Among the text included the following,

21   purportedly a private message written by K.C. to C.S. CRAWFORD on a previous date,

22   reading, in part, "…about trying to make myself better and stronger, more decisive for

23   you and [S.C.]. I'm supposed to be the head of household and I can barely stand up for

24   myself or how many times I feel like I let you down because I don't want to try

25   something new with you or that I wouldn't let you treat me." According to Facebook

26   subscriber information, this account is registered to "Scott Crawford" with a verified

27   phone number of (512) 667-5926.

28

Affidavit of SA Crocheriere – 16
USAO # 2021R01443

UNITED STATES ATTORNEY
700 Stewart Street, Suite 300
Seattle, Washington 98101
(206) 553-7970

1       39.     Based on my interview with K.C. and my review of digital files provided

2  by her, the Instagram account "im_not_broken_just_very_sad" (account identifier

3  27605029014) sent multiple harassing messages to K.C. and public comments on her

4  posts. Among the messages I have reviewed, a string of messages sent to K.C. on

5  January 1, 2020, included the following, apparently posted in the guise of an anonymous

6  third party: "…he feels like his mother is emperor palpatine and you are anakin

7  Skywalker. He feels like padme in the sense that you are turning to the dark side and it is

8  breaking his heart. To side with her over him after everything she has done is almost too

9  much for him to bear and the fact that you left [S.C.] with her instead of him is infuriating

10  to him," and "…from his point of view you are the aggressor, not the victim; you have

11  everything and he is begging for mercy scraps. He truly feels manipulated and baited by

12  you, he feels you played him and then betrayed ever promise you ever made to him." I

13  later confirmed these messages to be genuine through the use of an electronic search

14  warrant to Meta Platforms, Inc. for their original copy of the content of the

15  "im_not_broken_just_very_sad" Instagram account. Among the public comments I have

16  reviewed included the following, also written in the guise of an anonymous third party:

17  "And I like how you say 'time to grow' like you are the same wrist cutting, medicated

18  sex toy for a married couple, flunking out of college, wanting to get two full arm sleeves

19  and a dozen piercings, sleeping with a husband and wife, your gay boyfriend, and then

20  seducing your future husband by telling him you were single, that you were when scott

21  first found you sleeping in the parking lot of the college. Good think you are away from

22  him and can 'grow,'" and "Good luck with a career as a sub hunter when you cant serve

23  on a ship… You are not a good person. Everything you knew about being good came

24  from him and like a 14 year old, hes no longer around so in your messed up head, nothing

25  he ever said was true." According  to Facebook subscriber information, this account is

26  registered to "scott crawford." The email address associated with the account is

27  "endlesssadness15@gmail.com," and the account was registered on January 1, 2020.

28

UNITED STATES ATTORNEY
700 Stewart Street, Suite 300
Seattle, Washington 98101
(206) 553-7970

40.     On December 6, 2021, Meta Platforms, Inc. was served with a preservation letter under 18 U.S.C. § 2703(f) related to Instagram account identifiers 27235979350 and 27605029014.

41.     On April 24, 2022, K.C. stated she believed C.S. CRAWFORD currently resided at 8620 8th Avenue West, Apartment C, Everett, WA 98204 (**TR1**) with a woman named "Jennifer." This address is consistent with the mailing addresses registered for many of the aforementioned electronic communications service accounts. Between April 25, 2022, and May 10, 2022, NCIS agents conducted multiple instances of physical surveillance of **TR1** and observed C.S. CRAWFORD entering and exiting the north door marked with a "C" in a manner consistent with someone who resides there. Agents additionally observed a woman believed to be "Jennifer" and another male entering and exiting the same apartment in a manner consistent with someone who resides there.

42.     On May 10, 2022, NCIS agents conducting physical surveillance of **TR1** observed C.S. CRAWFORD exit the residence, get into the driver's seat of a silver Ford EcoSport Sports Utility Vehicle (SUV) parked in the driveway, and drive away. The vehicle bore license plate number BPT0800. Records checks revealed the vehicle to be most recently registered to C.S. CRAWFORD, however the registration expired in June 2021.

### KNOWLEDGE BASED ON TRAINING & EXPERIENCE

43.     Based upon my training, experience, and participation in this and other investigations involving crimes completed using digital technology, my conversations with other experienced investigators with whom I work, I have learned and know the following.

44.     I know that those who commit crimes completed using electronic communications services, including cyberstalking and/or harassing interstate communications, commonly maintain many accounts with numerous electronic service providers. Many of these accounts utilize pseudonyms or other false identifying information in order to obfuscate their true identity, convey to their victims an illusion of

AFFIDAVIT OF SA Crochetiere – 18
USAO # 2021R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 300
SEATTLE, WASHINGTON 98101
(206) 553-7970

conspiracy or pervasiveness, and create distance from their crimes. Due to these factors, investigators are rarely aware of the full range of a cyberstalker's activities until the instrumentalities are physically seized and their contents examined for previously unknown accounts and activity.

45.     I know that those who commit cyberstalking and/or harassing interstate communications commonly use mobile computing devices such as smart phones in addition to traditional computers in order to perpetrate their crimes. They may prefer mobile computing devices because, first, many electronic communications services only make their services available on mobile computing device platforms. Second, they can be easily carried to permit the user maximum flexibility in selecting the time and place they can commit the offenses, as commonly the offenses involve frequent, repeated, and persistent communications.

46.     Also, in my experience, it is very for individuals involved in such illegal conduct to use and maintain computers or mobile computing devices at their residences and/or vehicles, when not on their person. By nature of their design and operation, network equipment is generally required to remain in one's residence.

47.     Based upon information learned during the investigation, I believe that C.S. CRAWFORD used computers and/or mobile computing devices as instrumentalities of the crimes of cyberstalking and harassing interstate communications. During my investigation, I have learned that C.S. CRAWFORD used various online services (Facebook, Instagram, Google, Amazon, and PornHub) to conduct his harassment of K.C. Therefore, I believe that evidence associated with these offenses is likely to be located in computers, mobile computing devices, networking hardware, and electronic storage media located in his residence or vehicle, or on his person.

## COMPUTERS, MOBILE DEVICES, ELECTRONIC STORAGE AND FORENSIC ANALYSIS

48.     As described above and in Attachment B, this application seeks permission to search for evidence and instrumentalities of cyberstalking and harassing interstate

Affidavit of SA Crochetiere – 19
USAO # 2021R01443

UNITED STATES ATTORNEY
700 Stewart Street, Suite 300
Seattle, Washington 98101
(206) 553-7970

1  communications that might be found in the locations to be searched, in whatever form

2  they may be found. One form in which such evidence may be found is data stored on

3  digital devices[1] such as computer hard drives or other electronic storage media. [2] Thus,

4  the warrant applied for would authorize the seizure of digital devices or other electronic

5  storage media, or potentially, the copying of electronically stored information from

6  digital devices or other electronic storage media, all under Rule 41(e)(2)(B).

7          49.     I know that when an individual uses a computer or mobile computing

8  device to conduct cyberstalking and harassing interstate communications, the individual's

9  computer or mobile computing device will generally serve both as an instrumentality for

10 committing the crime, and also as a storage device for evidence of the crime. From my

11 training and experience, I believe that a computer or mobile computing device used to

12 commit a crime of this type may contain: data that is evidence of how the computer was

13 used; data showing the identity of the person perpetrating the conduct; data that was sent

14 or received; notes as to how the criminal conduct was achieved; records of Internet

15 discussions about the crime; and other records that indicate the nature of the offense.

16         50.     *Probable cause.* I submit that if a computer, mobile computing device,

17 networking hardware, or electronic storage medium is found pursuant to a search

18 authorized by the warrant, there is probable cause to believe evidence will be stored in

19 that item, for at least the following reasons:

20

21 _____

22 [1] As used herein, "digital device" includes any device capable of processing and/or storing data
   in electronic form, including, but not limited to: central processing units, laptop, desktop,
23 notebook or tablet computers, computer servers, peripheral input/output devices such as
   keyboards, printers, scanners, plotters, monitors, and drives intended for removable media,
24 related communications devices such as modems, routers and switches, and electronic/digital
   security devices, wireless communication devices such as mobile or cellular telephones and
25 telephone paging devices, personal data assistants ("PDAs"), iPods/iPads, Blackberries, digital
   cameras, digital gaming devices, global positioning satellite devices (GPS), or portable media
26 players.

27 [2] Electronic Storage media is any physical object upon which electronically stored information
   can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs,
28 and other magnetic or optical media.

1         a.      Based on my knowledge, training, and experience, I know that

2    computer files or remnants of such files can be preserved (and consequently also then

3    recovered) for months or even years after they have been downloaded onto a storage

4    medium, deleted, or accessed or viewed via the Internet. Electronic files downloaded to

5    any electronic storage medium can be stored for years at little or no cost. Even when files

6    have been deleted, they can be recovered months or years later using readily available

7    forensics tools. This is so because when a person "deletes" a file on a digital device or

8    other electronic storage media, the data contained in the file does not actually disappear;

9    rather, that data remains on the electronic storage medium until it is overwritten by new

10   data.

11         b.      Therefore, deleted files, or remnants of deleted files, may reside in

12   free space or slack space—that is, in space on the electronic storage medium that is not

13   currently being used by an active file—for long periods of time before they are

14   overwritten. In addition, a computer or mobile computing device's operating system may

15   also keep a record of deleted data in a "swap" or "recovery" file.

16         c.      Similarly, files that have been viewed via the Internet are typically

17   automatically downloaded into a temporary Internet directory or "cache." The browser

18   often maintains a fixed amount of storage space devoted to these files, and the files are

19   only overwritten as they are replaced with more recently viewed Internet pages or if a

20   user takes steps to delete them.

21         d.      Wholly apart from user-generated files, computer storage media—in

22   particular, computers' internal hard drives—contain electronic evidence of how a

23   computer has been used, what it has been used for, and who has used it. To give a few

24   examples, this forensic evidence can take the form of operating system configurations,

25   artifacts from operating system or application operation; file system data structures, and

26   virtual memory "swap" or paging files. Computer users typically do not erase or delete

27   this evidence, because special software is typically required for that task. However, it is

28   technically possible to delete this information.

e.      Home networking hardware such as "routers," "switches," and "modems" maintain extensive records of every computer or mobile computing device that has connected to the internet through it, in the form of logs documenting each computer or mobile computing device's media access control (MAC) address (completely unique to that only that device, similar to a serial number) and the times, dates, and general activity of that computer or mobile computing device. This can provide information about who was in control of specific account activity using a specific computing device at a particular date and time.

51.      Based on my training and experience, the data maintained in a mobile computing device used by a person committing cyberstalking is often evidence of a crime or crimes. This includes the following:

a.      The assigned number to a smart phone (known as the mobile directory number or MDN), and the identifying telephone serial number (International Mobile Equipment Identity, or IMEI) are important evidence because they reveal the service provider, allow us to confirm subscriber information, and uniquely identify the telephone. This information can be used to confirm if the smart phone was the computing device logging into certain target electronic communications service accounts at certain times.

b.      The stored list of recent received and sent calls is important evidence. It identifies telephones recently in contact with the smart phone user. This is valuable information in this investigation because it can demonstrate that the subject of the investigation was attempting to contact known victims of his suspected stalking and harassing interstate communications and/or identify additional victims that were previously unknown. Additionally, logs and time stamps of outgoing calls can demonstrate the communications were of a repeated nature and/or were initiated at inconvenient, bothersome hours.

c.      Stored text messages are important evidence, similar to stored phone numbers. Agents can identify both known and previously unknown victims. Additionally,

AFFIDAVIT OF SA Crocheтiere – 22
USAO # 2021R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 300
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    due to the nature of cellular telephone service provider's business operations, the

2    providers rarely retain the content of text messages and therefore that data is only

3    obtainable through control of the actual device.

4          d.     The software applications loaded on a mobile computing device are

5    also important evidence. Beyond simply confirming that the subject of the investigation

6    utilizes the same electronic communications services as were used to perpetrate the

7    criminal offenses, most software applications indicate previously-utilized accounts when

8    opened. This can link the bearer of the mobile computing device to specific accounts that

9    are known to be involved in the alleged criminal activity.

10         52.    *Forensic evidence.* As further described in Attachment B, this application

11   seeks permission to locate not only computer files that might serve as direct evidence of

12   the crimes described on the warrant, but also for forensic electronic evidence that

13   establishes how digital devices or other electronic storage media were used, the purpose

14   of their use, who used them, and when. There is probable cause to believe that this

15   forensic electronic evidence will be on any digital devices or other electronic storage

16   media located during the search because:

17         a.     Stored data can provide evidence of a file that was once on the

18   digital device or other electronic storage media but has since been deleted or edited, or of

19   a deleted portion of a file (such as a paragraph that has been deleted from a word

20   processing file). Virtual memory paging systems can leave traces of information on the

21   digital device or other electronic storage media that show what tasks and processes were

22   recently active.  Web browsers, e-mail programs, and chat programs store configuration

23   information that can reveal information such as online nicknames and passwords.

24   Operating systems can record additional information, such as the history of connections

25   to other computers, the attachment of peripherals, the attachment of USB flash storage

26   devices or other external storage media, and the times the digital device or other

27   electronic storage media was in use. Computer file systems can record information about

28   the dates files were created and the sequence in which they were created.

Affidavit of SA Crochetiere – 23
USAO # 2021R01443

UNITED STATES ATTORNEY
700 Stewart Street, Suite 300
Seattle, Washington 98101
(206) 553-7970

b.     As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner and/or others with direct physical access to the computer. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline

AFFIDAVIT OF SA CROCHETIERE – 24
USAO # 2021R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 300
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    information described herein may either inculpate or exculpate the computer user. Last,

2    information stored within a computer may provide relevant insight into the computer

3    user's state of mind as it relates to the offense under investigation. For example,

4    information within the computer may indicate the owner's motive and intent to commit a

5    crime (e.g., internet searches indicating criminal planning), or consciousness of guilt

6    (e.g., running a "wiping" program to destroy evidence on the computer or password

7    protecting/encrypting such evidence in an effort to conceal it from law enforcement).

8           d.      The process of identifying the exact files, blocks, registry entries,

9    logs, or other forms of forensic evidence on a digital device or other electronic storage

10   media that are necessary to draw an accurate conclusion is a dynamic process. While it is

11   possible to specify in advance the records to be sought, digital evidence is not always

12   data that can be merely reviewed by a review team and passed along to investigators.

13   Whether data stored on a computer is evidence may depend on other information stored

14   on the computer and the application of knowledge about how a computer behaves.

15   Therefore, contextual information necessary to understand other evidence also falls

16   within the scope of the warrant.

17          e.      Further, in finding evidence of how a digital device or other

18   electronic storage media was used, the purpose of its use, who used it, and when,

19   sometimes it is necessary to establish that a particular thing is not present. For example,

20   the presence or absence of counter-forensic programs or anti-virus programs (and

21   associated data) may be relevant to establishing the user's intent.

22          53.     Searching computer systems for the evidence described in Attachment B

23   may require a range of data analysis techniques. In some cases, it is possible for agents

24   and analysts to conduct carefully targeted searches that can locate evidence without

25   requiring a time-consuming manual search through unrelated materials that may be

26   commingled with criminal evidence. In other cases, however, such techniques may not

27   yield the evidence described in the warrant. Criminals can mislabel or hide files and

28   directories, encode communications to avoid using key words, attempt to delete files to

AFFIDAVIT OF SA CROCHETIERE – 25
USAO # 2021R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 300
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   evade detection, or take other steps designed to frustrate law enforcement searches for

2   information. These steps may require agents and law enforcement or other analysts with

3   appropriate expertise to conduct more extensive searches, such as scanning areas of the

4   disk not allocated to listed files, or peruse every file briefly to determine whether it falls

5   within the scope of the warrant. In light of these difficulties, the Naval Criminal

6   Investigative Service intends to use whatever data analysis techniques appear necessary

7   to locate and retrieve the evidence described in Attachment B.

8        54.   *Necessity of Seizing or Copying Entire Computers or Storage Media*. Based

9   upon my knowledge, training and experience, I know that searching for information

10   stored in computers often requires agents to seize most or all electronic storage devices to

11   be searched later by a qualified computer expert in a laboratory or other controlled

12   environment. This is often necessary to ensure the accuracy and completeness of such

13   data, and to prevent the loss of the data either from accidental or intentional destruction.

14   Additionally, to properly examine those storage devices in a laboratory setting, it is often

15   necessary that some computer equipment, peripherals, instructions, and software be

16   seized and examined in the laboratory setting. This is true because of the following:

17        a.   *The volume of evidence*. Electronic storage media (like hard disks,

18   optical disks, flash drives, or flash cards) can store the equivalent of millions of pages of

19   information. Additionally, a suspect may try to conceal criminal evidence; he or she

20   might store it in random order with deceptive file names. This may require searching

21   authorities to peruse all the stored data to determine which particular files are evidence or

22   instrumentalities of crime. This sorting process can take weeks or months, depending on

23   the volume of data stored, and it would be impractical and invasive to attempt this kind of

24   data search on-site.

25        b.   *The time required for an examination*. As noted above, not all

26   evidence takes the form of documents and files that can be easily viewed on site.

27   Analyzing evidence of how a computer has been used, what it has been used for, and who

28   has used it requires considerable time, and taking that much time on premises could be

AFFIDAVIT OF SA Crochetiere – 26
USAO # 2021R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 300
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  unreasonable. As explained above, because the warrant calls for forensic electronic

2  evidence, it is exceedingly likely that it will be necessary to thoroughly examine the

3  respective digital device and/or electronic storage media to obtain evidence.  Computer

4  hard drives, digital devices and electronic storage media can store a large volume of

5  information.  Reviewing that information for things described in the warrant can take

6  weeks or months, depending on the volume of data stored, and would be impractical and

7  invasive to attempt on-site.

8          b.      *Technical requirements*. Searching computer systems for criminal

9  evidence sometimes requires highly technical processes requiring expert skill and

10  properly controlled environment. The vast array of computer hardware and software

11  available requires even computer experts to specialize in some systems and applications,

12  so it is difficult to know before a search which expert is qualified to analyze the system

13  and its data. In any event, however, data search processes are exacting scientific

14  procedures designed to protect the integrity of the evidence and to recover even "hidden,"

15  erased, compressed, password- protected, or encrypted files. Because computer evidence

16  is vulnerable to inadvertent or intentional modification or destruction (both from external

17  sources or from destructive code imbedded in the system as a "booby trap"), a controlled

18  environment may be necessary to complete an accurate analysis.

19          c.      *Variety of forms of electronic media*. Evidence sought under this

20  warrant could be stored in a variety of storage media formats that may require off-site

21  reviewing with specialized forensic tools.

22          55.     *Nature of Examination*. Based on the foregoing, and consistent with Rule

23  41(e)(2)(B), I hereby request the Court's permission to seize the computer hardware (and

24  associated peripherals), mobile computing devices, networking hardware, and electronic

25  storage media that are believed to contain some or all of the evidence described in the

26  warrant, and to conduct an off-site search of the same for the evidence described, if, upon

27  arriving at the scene, the agents executing the search conclude that it would be

28  impractical to search the specified hardware on-site for this evidence. The off-site search

AFFIDAVIT OF SA Crochetiere – 27
USAO # 2021R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 300
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  may require techniques, including but not limited to computer-assisted scans of the entire

2  medium, that might expose many parts of a device to human inspection in order to

3  determine whether it is evidence described by the warrant.

4      56.    As with any search warrant, I expect that this warrant will be executed

5  reasonably. Reasonable execution will likely involve conducting an on-scene

6  investigation of what devices must be seized or copied.

7      57.    *Biometric unlock*. The warrant I am applying for would permit law

8  enforcement to obtain from certain individuals the display of physical biometric

9  characteristics (such as fingerprint, thumbprint, or facial characteristics) in order to

10  unlock devices subject to search and seizure pursuant to this warrant.  I seek this

11  authority based on the following:

12          a.    I know from my training and experience, as well as from

13  information found in publicly available materials published by device manufacturers, that

14  many electronic devices, particularly newer mobile devices and laptops, offer their users

15  the ability to unlock the device through biometric features in lieu of a numeric or

16  alphanumeric passcode or password. These biometric features include fingerprint

17  scanners and facial recognition features. Some devices offer a combination of these

18  biometric features, and the user of such devices can select which features they would like

19  to utilize.

20          b.    If a mobile computing device is equipped with a fingerprint scanner,

21  a user may enable the ability to unlock the device through his or her fingerprints. For

22  example, Apple offers a feature called "Touch ID," which allows a user to register up to

23  five fingerprints that can unlock a device. Once a fingerprint is registered, a user can

24  unlock the device by pressing the relevant finger to the device's Touch ID sensor, which

25  is found in the round button (often referred to as the "home" button) located at the bottom

26  center of the front of the device. The fingerprint sensors found on devices produced by

27  other manufacturers have different names but operate similarly to Touch ID.If a device is

28  equipped with a facial recognition feature, a user may enable the ability to unlock the

1   device through his or her face. For example, Apple offers a facial recognition feature

2   called "Face ID."  During the Face ID registration process, the user holds the device in

3   front of his or her face. The device's camera then analyzes and records data based on the

4   user's facial characteristics. The device can then be unlocked if the camera detects a face

5   with characteristics that match those of the registered face. Facial recognition features

6   found on devices produced by other manufacturers have different names but operate

7   similarly to Face ID.

8           c.      In my training and experience, users of electronic devices often

9   enable the aforementioned biometric features because they are considered to be a more

10  convenient way to unlock a device than by entering a numeric or alphanumeric passcode

11  or password. Moreover, in some instances, biometric features are considered to be a more

12  secure way to protect a device's contents. This is particularly true when the users of a

13  device are engaged in criminal activities and thus have a heightened concern about

14  securing the contents of a device.

15          d.      As discussed in this affidavit, based on my training and experience I

16  believe that one or more digital devices will be found during the search. The passcode or

17  password that would unlock the device(s) subject to search under this warrant is not

18  known to law enforcement. Thus, law enforcement personnel may not otherwise be able

19  to access the data contained within the device(s), making the use of biometric features

20  necessary to the execution of the search authorized by this warrant.

21          e.      I also know from my training and experience, as well as from

22  information found in publicly available materials including those published by device

23  manufacturers, that biometric features will not unlock a device in some circumstances

24  even if such features are enabled. This can occur when a device has been restarted,

25  inactive, or has not been unlocked for a certain period of time. For example, Apple

26  devices cannot be unlocked using Touch ID when (1) more than 48 hours has elapsed

27  since the device was last unlocked or (2) when the device has not been unlocked using a

28  fingerprint for 4 hours and the passcode or password has not been entered in the last 156

1  hours. Biometric features from other brands carry similar restrictions. Thus, in the event

2  law enforcement personnel encounter a locked device equipped with biometric features,

3  the opportunity to unlock the device through a biometric feature may exist for only a

4  short time.

5       58.    Due to the foregoing, if law enforcement personnel encounter a device that

6  is subject to search and seizure pursuant to this warrant and may be unlocked using one

7  of the aforementioned biometric features, the warrant I am applying for would permit law

8  enforcement personnel to (1) press or swipe the fingers (including thumbs) of

9  C.S. CRAWFORD, who is found at the subject premises and reasonably believed by law

10  enforcement to be a user of the device, to the fingerprint scanner of the device; (2) hold

11  the device in front of his face and activate the facial recognition feature, for the purpose

12  of attempting to unlock the device in order to search its contents as authorized by this

13  warrant. In depressing a person's thumb or finger onto a device and in holding a device in

14  front of a person's face, law enforcement may not use excessive force, as defined in

15  *Graham v. Connor*, 490 U.S. 386 (1989); specifically, law enforcement may use no more

16  than objectively reasonable force in light of the facts and circumstances confronting

17  them.

18                             **SEARCH TECHNIQUES**

19       59.    Based on the foregoing, and consistent with Rule 41(e)(2)(B) of the Federal

20  Rules of Criminal Procedure, the warrant I am applying for will permit seizing, imaging,

21  or otherwise copying digital devices or other electronic storage media that reasonably

22  appear capable of containing some or all of the data or items that fall within the scope of

23  Attachment B to this Affidavit, and will specifically authorize a later review of the media

24  or information consistent with the warrant.

25       60.    Because **TR1** may be a residence shared by C.S. CRAWFORD with other

26  people, it is possible that **TR1** will contain digital devices or other electronic storage

27  media that are predominantly used, and perhaps owned, by persons who are not suspected

28  of a crime. If agents conducting the search nonetheless determine that it is possible that

AFFIDAVIT OF SA Crochetiere – 30
USAO # 2021R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 300
SEATTLE, WASHINGTON 98101
(206) 553-7970

the things described in this warrant could be found on those computers, this application seeks permission to search and if necessary to seize those computers as well. It may be impossible to determine, on scene, which computers contain the things described in this warrant.

61.     Consistent with the above, I hereby request the Court's permission to seize and/or obtain a forensic image of digital devices or other electronic storage media that reasonably appear capable of containing data or items that fall within the scope of Attachment B to this Affidavit, and to conduct off-site searches of the digital devices or other electronic storage media and/or forensic images, using the following procedures:

**A.     Processing the Search Sites and Securing the Data**

62.     Upon securing the physical search site, the search team will conduct an initial review of any digital devices or other electronic storage media located at the subject premises described in Attachment A that are capable of containing data or items that fall within the scope of Attachment B to this Affidavit, to determine if it is possible to secure the data contained on these devices onsite in a reasonable amount of time and without jeopardizing the ability to accurately preserve the data.

63.     In order to examine the electronically stored information ("ESI") in a forensically sound manner, law enforcement personnel with appropriate expertise will attempt to produce a complete forensic image, if possible and appropriate, of any digital device or other electronic storage media that is capable of containing data or items that fall within the scope of Attachment B to this Affidavit.[3]

---

[3] The purpose of using specially trained computer forensic examiners to conduct the imaging of digital devices or other electronic storage media is to ensure the integrity of the evidence and to follow proper, forensically sound, scientific procedures. When the investigative agent is a trained computer forensic examiner, it is not always necessary to separate these duties. Computer forensic examiners often work closely with investigative personnel to assist investigators in their search for digital evidence. Computer forensic examiners are needed because they generally have technological expertise that investigative agents do not possess. Computer forensic examiners, however, often lack the factual and investigative expertise that an investigative agent may possess on any given case. Therefore, it is often important that computer forensic examiners and investigative personnel work closely together.

64.     A forensic image may be created of either a physical drive or a logical drive. A physical drive is the actual physical hard drive that may be found in a typical computer. When law enforcement creates a forensic image of a physical drive, the image will contain every bit and byte on the physical drive. A logical drive, also known as a partition, is a dedicated area on a physical drive that may have a drive letter assigned (for example the c: and d: drives on a computer that actually contains only one physical hard drive). Therefore, creating an image of a logical drive does not include every bit and byte on the physical drive. Law enforcement will only create an image of physical or logical drives physically present on or within the subject device. Creating an image of the devices located at the search locations will not result in access to any data physically located elsewhere. However, digital devices or other electronic storage media at the search locations that have previously connected to devices at other locations may contain data from those other locations.

65.     If based on their training and experience, and the resources available to them at the search site, the search team determines it is not practical to make an on-site image within a reasonable amount of time and without jeopardizing the ability to accurately preserve the data, then the digital devices or other electronic storage media will be seized and transported to an appropriate law enforcement laboratory to be forensically imaged and reviewed.

**A.     Searching the Forensic Images**

66.     Searching the forensic images for the items described in Attachment B may require a range of data analysis techniques. In some cases, it is possible for agents and analysts to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence described in the warrant, and law enforcement may need to conduct more

Affidavit of SA Crochetiere – 32
USAO # 2021R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 300
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  extensive searches to locate evidence that falls within the scope of the warrant. The

2  search techniques that will be used will be only those methodologies, techniques and

3  protocols as may reasonably be expected to find, identify, segregate and/or duplicate the

4  items authorized to be seized pursuant to Attachment B to this affidavit. Those

5  techniques, however, may necessarily expose many or all parts of a hard drive to human

6  inspection in order to determine whether it contains evidence described by the warrant.

7  **PAST EFFORTS TO OBTAIN ELECTRONICALLY STORED INFORMATION**

8       67.    As described above, I have obtained information regarding the Target

9  Offenses through search warrants I obtained for information in the possession of the

10  following providers of electronic communications services: Google LLC, Meta

11  Platforms, Inc. (parent company of Facebook and Instagram), Amazon.com, and MG

12  Freesites, Ltd. (parent company of Pornhub.com). Law enforcement review of the

13  information received pursuant to these search warrants is still underway, though in some

14  cases I have been able to corroborate some of the information I gathered from witnesses

15  through the information received in response to the search warrants from the electronic

16  communications services providers. The information I seek in the present search warrant

17  would serve additional purposes, including: to link C.S. CRAWFORD to the evidence of

18  cyberstalking and harassing communications and to the sources of those communications;

19  to search for likely additional communications and evidence of cyberstalking not

20  included in the information provided by the providers, and to obtain additional evidence

21  of C.S. CRAWFORD's knowledge, intent, motive, identity, opportunity, and plan in

22  committing the Target Offenses.

23                 **REQUEST FOR SEALING**

24       68.    It is respectfully requested that this Court issue an order sealing, until

25  further order of the Court, all papers submitted in support of this application, including

26  the application and search warrant. I believe that sealing this document is necessary

27  because the items and information to be seized are relevant to the investigation into the

28  criminal activity of C.S. CRAWFORD which will still be ongoing. Based upon my

AFFIDAVIT OF SA Crochetiere – 33
USAO # 2021R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 300
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  training and experience, I have learned that, online criminals actively search for criminal
2  affidavits and search warrants via the Internet and disseminate them to other online
3  criminals as they deem appropriate, i.e., post them publicly online through various
4  forums. Premature disclosure of the contents of this affidavit and related documents may
5  have a significant and negative impact on the continuing investigation and may severely
6  jeopardize its effectiveness.

7                                   **CONCLUSION**

8       69.    Based on the information set forth herein, I submit that this affidavit
9  supports probable cause for a warrant to search **TR1** as described in Attachment A-1, the
10 vehicle described in Attachment A-2, and the person of C.S. CRAWFORD described in
11 Attachment A-3, for evidence and instrumentalities, as described in Attachment B, of the
12 crimes of cyberstalking, in violation of 18 U.S.C. § 2261A(2)(B), and repeated harassing
13 interstate communications, in violation of 47 U.S.C. § 223(a)(1)(E).

14
15
16
17                          EDDY D CROCHETIERE, Affiant
                            Special Agent
18                          Naval Criminal Investigative Service
19
20      The above-named agent provided a sworn statement attesting to the truth of the
21 contents of the foregoing affidavit by telephone on the 27th day of May 2022.
22
23
24                          S. KATE VAUGHAN
25                          United States Magistrate Judge
26
27
28

AFFIDAVIT OF SA CROCHETIERE – 34
USAO # 2021R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 300
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ATTACHMENT A-1

## Description of Property to Be Searched

The property to be searched is a residence located at **8620 8th Avenue West, Apartment C, Everett, Washington 98204** ("the Target Residence 1" or "TR1"). TR1 is the apartment designated as Apartment C within a light blue/gray-colored two-story four-unit apartment building with two garage doors facing the street on the west side of 8th Avenue West in Everett (pictured below, left). The entrance to Apartment C is accessed by stairs to a door on the north side of the building (pictured below, right), and has a "C" on the door.

 

ATTACHMENT A-1
USAO # 2021R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 300
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

**ATTACHMENT A-2**

2

**Description of Vehicle to Be Searched**

3          The vehicle to be searched is a silver Ford Ecosport with Washington state license

4    plate number BPT0800 (pictured below), provided the vehicle is situated within the

5    Western District of Washington.

6

7

8



9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT A-2
USAO # 2021R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 300
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT A-3**

**Description of Person to Be Searched**

The person to be searched is the person of Christopher Scott CRAWFORD, date of birth ███████, 1980, provided he is situated within the Western District of Washington. C.S. CRAWFORD is a white male approximately 6 feet 2 inches tall, weighing approximately 160 pounds. A photograph of the person to be searched is below.



ATTACHMENT A-3
USAO # 2021R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 300
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT B**

**Items to be Seized**

The following records, documents, files, or materials, in whatever form, including handmade or mechanical form (such as printed, written, handwritten, or typed); photocopies or other photographic form; and electrical, electronic, and magnetic form (such as tapes, cassettes, hard disks, floppy disks, diskettes, compact discs, CD-ROMs, DVDs, optical discs, Zip cartridges, printer buffers, smart cards, or electronic notebooks, or any other electronic storage medium) that constitute evidence, instrumentalities, or fruits of violations of cyberstalking, in violation of 18 U.S.C. § 2261A(2)(B), and repeated harassing interstate communications, in violation of 47 U.S.C. § 223(a)(1)(E) (the Target Offenses):

1.      All records relating to the Target Offenses, those violations involving Christopher Scott CRAWFORD and occurring from April 1, 2019, to the present, including:

        a.      All records of electronic or telephonic communications, whether in written or audio form, including the substance of such communications, relating to the Target Offenses listed above;

        b.      Any written or electronically stored communications to or from the following individuals described in the application for this search warrant: K.C., D.A., M.N., J.M., or any family member or associate of K.C.;

        c.      Any communications to any email address affiliated with the United States Navy;

        d.      Records of internet searches related to the individuals in para. 1.b., above, including records contained in caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any internet search engine, and records of user-typed web addresses;

        e.      Images of K.C. or any of the individuals in para.1.b., above;

        f.      Any records of the sending or receiving of images of K.C. through

ATTACHMENT B
USAO# 2021R01443 - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 300
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    any messaging means or application, and any communications related to the possession,

2    receipt, or transfer of images of K.C.;

3              g.     Records related to the access of pornhub.com website, any account

4    related to that website, and/or the transfer of files to that website;

5              h.     Any records related to the use of the following email accounts:

6                     i.     crawford132@gmail.com;

7                     ii.    rickjohnston1888@gmail.com;

8                     iii.   endlesssadness15@gmail.com;

9              i.     Any records related to the use of the following Facebook accounts:

10                    iv.    Display name "Rick Johnston," account identifier

11                           100074078874761;

12                    v.     Display name "Scott Crawford," account identifier

13                           100002445195272;

14                    vi.    Display name "Christopher Crawford," account identifier

15                           100054164457078;

16             i.     Any records related to the use of the following Instagram accounts:

17                    vii.   Display name "cscottcrawford," account identifier

18                           27235979350;

19                    viii.  Display name ""im_not_broken_just_very_sad," account

20                           identifier 27605029014;

21             j.     Any records or court documents related to the issuance or service of

22    any restraining order, protective order, or no-contact order restraining the activities of

23    Christopher Scott CRAWFORD;

24

25

26

27

28

ATTACHMENT B
USAO# 2021R01443 - 2

1    2.    Digital devices[1] or other electronic storage media[2] and/or their components,
2  which include:

3          a.    Any digital device or other electronic storage media capable of being
4  used to commit, further, or store evidence of the offenses listed above;

5          b.    Any digital devices or other electronic storage media used to
6  facilitate the transmission, creation, display, encoding or storage of data, including word
7  processing equipment, modems, docking stations, monitors, cameras, printers, plotters,
8  encryption devices, and optical scanners;

9          c.    Any magnetic, electronic or optical storage device capable of storing
10  data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-R, CD-RWs, DVDs, optical
11  disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic
12  dialers, electronic notebooks, and personal digital assistants;

13          d.    Any documentation, operating logs and reference manuals regarding
14  the operation of the digital device or other electronic storage media or software;

15          e.    Any applications, utility programs, compilers, interpreters, and other
16  software used to facilitate direct or indirect communication with the computer hardware,
17  storage devices, or data to be searched;

18          f.    Any physical keys, encryption devices, dongles and similar physical
19  items that are necessary to gain access to the computer equipment, storage devices or

20

21
_____

22  [1] "Digital device" includes any device capable of processing and/or storing data in electronic
23  form, including, but not limited to: central processing units, laptop, desktop, notebook or tablet
     computers, computer servers, peripheral input/output devices such as keyboards, printers,
24  scanners, plotters, monitors, and drives intended for removable media, related communications
     devices such as modems, routers and switches, and electronic/digital security devices, wireless
25  communication devices such as mobile or cellular telephones and telephone paging devices,
     personal data assistants ("PDAs"), iPods/iPads, Blackberries, digital cameras, digital gaming
26  devices, global positioning satellite devices (GPS), or portable media players.

27  [2] Electronic Storage media is any physical object upon which electronically stored information
28  can be recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs,
     and other magnetic or optical media.

ATTACHMENT B
USAO# 2021R01443 - 3

1  data; and

2        g.      Any passwords, password files, test keys, encryption codes or other

3  information necessary to access the computer equipment, storage devices or data.

4        3.      Any digital devices or other electronic storage media that were or may have

5  been used as a means to commit the Target Offenses described on the warrant.

6        4.      For any digital device or other electronic storage media upon which

7  electronically stored information that is called for by this warrant may be contained, or

8  that may contain things otherwise called for by this warrant:

9        a.      evidence of who used, owned, or controlled the digital device or

10  other electronic storage media at the time the things described in this warrant were

11  created, edited, or deleted, such as logs, registry entries, configuration files, saved

12  usernames and passwords, documents, browsing history, user profiles, email, email

13  contacts, "chat," instant messaging logs, photographs, and correspondence;

14        b.      evidence of software that would allow others to control the digital

15  device or other electronic storage media, such as viruses, Trojan horses, and other forms

16  of malicious software, as well as evidence of the presence or absence of security software

17  designed to detect malicious software;

18        c.      evidence of the lack of such malicious software;

19        d.      evidence of the attachment to the digital device of other storage

20  devices or similar containers for electronic evidence;

21        e.      evidence of counter-forensic programs (and associated data) that are

22  designed to eliminate data from the digital device or other electronic storage media;

23        f.      evidence of the times the digital device or other electronic storage

24  media was used;

25        g.      passwords, encryption keys, and other access devices that may be

26  necessary to access the digital device or other electronic storage media;

27        h.      documentation and manuals that may be necessary to access the

28  digital device or other electronic storage media or to conduct a forensic examination of

ATTACHMENT B
USAO# 2021R01443 - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 300
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   the digital device or other electronic storage media;

2           i.      contextual information necessary to understand the evidence

3   described in this attachment.

4       5.      Records and things evidencing the use of an Internet Protocol address

5   2601:601:a300:4ab0:cd57:98ec:2a4a:6899 to access the internet including:

6           a.      routers, modems, and network equipment used to connect computers

7   to the internet;

8           b.      records of internet protocol addresses used;

9           c.      records of internet activity, including firewall logs, caches, browser

10  history and cookies, "bookmarked" or "favorite" web pages, search terms that the user

11  entered into any internet search engine, and records of user-typed web addresses.

12

13          In depressing a person's thumb or finger onto a device and in holding a device in

14  front of a person's face, law enforcement may not use excessive force, as defined in

15  *Graham v. Connor*, 490 U.S. 386 (1989); specifically, law enforcement may use no more

16  than objectively reasonable force in light of the facts and circumstances confronting

17  them.

18

19  THE SEIZURE OF DIGITAL DEVICES OR OTHER ELECTRONIC STORAGE

20  MEDIA AND/OR THEIR COMPONENTS AS SET FORTH HEREIN IS

21  SPECIFICALLY AUTHORIZED BY THIS SEARCH WARRANT, NOT ONLY TO

22  THE EXTENT THAT SUCH DIGITAL DEVICES OR OTHER ELECTRONIC

23  STORAGE MEDIA CONSTITUTE INSTRUMENTALITIES OF THE CRIMINAL

24  ACTIVITY DESCRIBED ABOVE, BUT ALSO FOR THE PURPOSE OF THE

25  CONDUCTING OFF-SITE EXAMINATIONS OF THEIR CONTENTS FOR

26  EVIDENCE, INSTRUMENTALITIES, OR FRUITS OF THE AFOREMENTIONED

27  CRIMES

28

ATTACHMENT B
USAO# 2021R01443 - 5